IN THE DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE McLAURIN, | )<br>) |
| Plaintiff | )<br>)<br>) NO. 1:21-CV-322 |
| v. | )<br>) |
| CITY OF ERIE, OFFICER JOSHUA ALLISON, OFFICER NICK BERNATWOICZ, OFFICER NICHOLAS STRAUCH, SERGEANT JAMES BEILAK, SERGEANT RYAN ONDERKO, DETECTIVE TODD MANGES, POLICE OFFICER JOHN DOE(S) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS**

AND NOW, come the Defendants, City of Erie, Officer Joshua Allison, Officer Nick Bernatowicz (misidentified as "Officer Nick Bernatwoicz"), Officer Nicholas Strauch, Sergeant James Bielak (misidentified as "Sergeant James Beilak"), Sergeant Ryan Onderko, and Detective Todd Manges, and in support of the instant motion aver as follows.

**PROCEDURAL HISTORY**

Plaintiff commenced this action by the filing of his Complaint [*ECF 1*] on or about November 17, 2021. Defendants filed their Answer with Affirmative Defenses [*ECF 11*] on January 20, 2022.

**FACTUAL AVERMENTS AND CLAIMS RAISED**

In Plaintiff's Complaint, he raises five separate counts against the Defendants. Specifically:

    a.    Count I: A Fourteenth Amendment *Monell* claim against the City of Erie;

      b.      Count II: A Fourth Amendment excessive force claim against the individually named officers;

      c.      Count III: A state law claim of intentional infliction of emotional distress against the individually named officers;

      d.      Count IV: A state law claim of assault against the individually named officers;

      e.      Count V: A state law claim of battery against the individually named officers.

According to the Complaint, Plaintiff was at Sophia's Tavern on November 23, 2019, when numerous City of Erie police officers, including the named Defendants, entered the tavern and searched for individuals with outstanding warrants. [*ECF 1, ¶¶14 – 17*]

The Plaintiff did not have an outstanding warrant but was on parole and therefore left the tavern after the officers arrived. [*ECF 1, ¶¶18 and 19*]

McLaurin left the tavern, walked outside to an alley on the south side of the tavern and approached a vehicle which was opened by a female companion who left the tavern before him. [*ECF 1, ¶¶20 – 21*]

Three of the named Defendant officers followed Mr. McLaurin into the alley and toward the vehicle where Officer Allison pulled his service weapon and pointed it at McLaurin.[1] [*ECF 1, ¶¶22 – 25*]

---

[1] Throughout the body of his Complaint, McLaurin references various documents and records and includes still photos from a security camera video. McLaurin alleges that the incident underlying this lawsuit was captured on one of the security cameras owned by Sophia's Tavern. McLaurin also makes reference to the official reports of Officer Bernatowicz and Officer Strauch. Because the referenced documents and records are "integral to or explicitly relied upon in the Complaint," this Court may consider these documents and records while ruling on the Defendants' Rule 12 Motion for Partial Judgment on the Pleadings. *See In Re: Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3rd Cir. 1997).*

*Plaintiff alleges that while Officer Allison kept his service weapon trained on Mr. McLaurin, Officer Bernatowicz and County Detective Manges approached McLaurin and grabbed (or attempted to grab) McLaurin's hands. [ECF 1, ¶¶27 – 28]*

Officer Strauch then arrived, allegedly punched McLaurin in the body and then punched him in the face allegedly rendering Mr. McLaurin unconscious. [ECF 1, ¶¶29 – 32]

Additional officers then arrived after McLaurin was placed on the ground. [ECF 1, ¶¶33 – 35]

In paragraphs 39 through 69, Plaintiff contends that the official reports of Officer Bernatowicz and Officer Strauch were fabricated and contained clearly false statements which are contradicted by the security camera video. [ECF 1, ¶¶39 – 69]

Plaintiff further contends that the security camera video reveals what actually happened and is contrary to the official reports of Officers Bernatowicz and Strauch. [ECF 1, ¶¶46, 50 – 52, 55 – 56, 68]

McLaurin alleges or implies that he did not resist arrest, never had an opportunity to resist arrest and was not disorderly in any fashion. [ECF 1, ¶¶45, 46, 56, 58, 68]

In Count I, McLaurin raises a Fourteenth Amendment *Monell* claim against the City of Erie alleging that the City of Erie Police Department has a custom of "turning a blind eye" to its officers' use of excessive force and a practice of failing to ensure that the officers and supervisors write honest and accurate reports and are properly disciplined when failing to do so. Plaintiff further alleges that City of Erie police officers have a custom of "standing by and failing to intervene to protect the person in custody when observing an officer use excessive force."

The instant motion does not seek to attack Plaintiff's *Monell* claims at this time.

In Count II, McLaurin alleges the use of excessive force in violation of the Fourth Amendment against the individually named officers.

The focus of McLaurin's use of force claim is clearly directed to the reasonableness of the alleged "repeated blows to the body and head." [*ECF 1, ¶¶ 30-32, 48, 50-53, 62-69, 97*]

McLaurin also alleges that he was "slammed to the ground" even though the security camera video does not support that allegation. [*ECF 1, ¶98*] See *Scott v. Harris*, 550 U.S. 372, 127 Sup. Ct. 1769 (2007) (Supreme Court determined the actual facts of the incident by reviewing a video tape which contradicted the plaintiff's version of events.)

McLaurin raises state law claims of intentional infliction of emotional distress, assault and battery in Counts III, IV and V, respectively.

## STANDARD OF REVIEW

### A. Standard For Judgment On The Pleadings Under F.R.C.P. 12(c)

A motion for judgment on the pleadings based upon a defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. A motion for judgment on the pleadings should be granted if the movant establishes that "there are no material issues of fact, and he is entitled to judgment as a matter of law." In considering a motion for judgment on the pleadings, a Court must accept all of the allegations in the pleadings of the parties against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party. *Zimmerman v. Corbett*, 873 Fed.3$^d$ 414, 417-418 (3rd Cir. 2017) (citations omitted).

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment "[a] after the pleadings are closed – but early enough not to delay trial." Federal Rule of Civil Procedure 12(c). Judgment on the pleadings is appropriate if "the movant clearly establishes that there are no material issues of fact and he is entitled to judgment as a matter of law." *Knopick v. Downey*,

4

963 Fed.Sup.2d 378, 391 (M.D. Pa. 2013) citing *Sikirica v. Nationwide Ins. Co.*, 416 Fed.3d 214, 220 (3rd Cir. 2005).

In determining a motion for judgment on the pleadings, a Court considers "the pleadings and attached exhibits, undisputedly authentic documents relied on by plaintiffs and attached to the motion, and matters of public record." *Knopick v. Downey, supra.* at 391; citing *Sportscare of Am., P.C. v. Multiplan, Inc.*, 2013 WL 1661018 (D.N.J. APR. 17 2013) (citing *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 Fed.Sup.2d 591, 595 (E.D. Pa. 2010).

As with a motion to dismiss and motion for summary judgment, the Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether the pleadings show that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sikirica*, 416 Fed.3d at 220.

### B.   Plaintiff's Reliance On Documents And Other Things

As a general matter, a District Court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment. *In Re: Burlington Coat Factory Sec. Litig.*, 114 Fed.3d 1410, 1426 (3rd Cir. 1997) (citations omitted).

In deciding Rule 12 motions, Courts in this circuit may consider documents integral to or explicitly relied upon in the complaint, *In Re: Burlington Coat Factory Sec. Litig.*, 114 Fed.3d 1410, 1426 (3rd Cir. 1997), or any undisputedly authentic documents that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *PBGC v. White Consol. Indus.*, 998 Fed.2d 1192, 1196 (3rd Cir. 1993). An exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without

converting the motion to dismiss into one for summary judgment. See *Schmidt v. Skolas*, 770 Fed.3d 241, 249 (3rd Cir. 2014) (quoting *In Re: Burlington Coat Factory*, 114 Fed.3d at 1426).

In the instant matter, the Plaintiff's Complaint is rife with references to the Sophia's Tavern security camera video (Exhibit A) and the official reports of Officers Bernatowicz and Strauch (Exhibits C and D, respectively). Therefore, those records should be considered integral to or explicitly relied upon by Mr. McLaurin in his Complaint. In fact, McLaurin states in more than one place in his Complaint that the security camera video is essentially the best evidence of the facts and circumstances surrounding his arrest by the Defendant officers. Accordingly, the moving Defendants have attached a copy of the security camera video and the reports of the officers to their Motion for Partial Judgment on the Pleadings and ask the Court to rely upon them in rendering a decision in this matter.

In addition to the security camera video, still photos and the reports of Officers Bernatowicz and Officer Strauch, Defendants have also attached to their motion the Criminal Information (Exhibit E), the Defendant's Statement of Understanding of Rights Prior to a Guilty Plea (Exhibit F) and the Sentencing Order (Exhibit G) stemming from Mr. McLaurin's criminal prosecution at Erie County Docket No. 479 of 2020. These documents are also properly considered by this Court in deciding the Motion for Partial Judgment on the Pleadings.

When ruling upon a Motion to Dismiss Pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of America*, 361 Fed.3d 217, 222 n.3 (3rd Cir. 2004) (citing *In Re: Burlington Coat Factory*, 114 Fed.3d at 1426). A Court may take judicial notice of documents filed in other Court proceedings

because they are matters of public record. See *Liberty International Underwriters Can. v. Scottsdale Ins. Co.*, 955 Fed.Sup.2d 317, 325 (D.N.J. 2013).

The documents attached to the Defendant's motion and marked as Exhibits E, F and G clearly show that Mr. McLaurin pled guilty to charges of resisting arrest and disorderly conduct arising out of his arrest of November 23, 2019. Therefore, Mr. McLaurin is prohibited from arguing that his stop, seizure and/or arrest by the Defendant officers lacked probable cause. Further, Mr. McLaurin is prohibited from arguing that he did not resist arrest and/or was not disorderly at the time of his arrest.

    **C.**    **Movant Officers' Use of Force Did Not Violate the Fourth Amendment**

To state a claim for excessive force a plaintiff must show that a seizure occurred and that it was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3rd Cir. 2004). In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989), the defining case on the subject of excessive force, the United States Supreme Court held that "*all* claims that law officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard…" *Graham*, 490 U.S. at 395. The analysis of reasonableness under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. Although the test of reasonableness under the Fourth Amendment "is not capable of precise definition or mechanical applications," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396-97. The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, the officer's actions are "objectively reasonable

7

in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 396. See also *Kopec*, 361 F.3d at 776. Therefore, "an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial." *Kopec*, 361 F.3d at 776, citing *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3rd Cir. 2003). Determining whether the force used to effectuate an arrest is "reasonable" requires balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (*quoting United States v. Place*, 462 U.S. 696, 703 (1983)).

"Not every push or shove even if it may later seem unnecessary in the peace of the judge's chambers violates the Fourth Amendment." *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973). In considering the reasonableness of a law enforcement officer's use of force, courts are to contemplate the specific facts and circumstances of the case, which include the severity of the underlying offense, the threat to the safety of the officers or others posed by the suspect in question, and whether that suspect is actively resisting arrest. *Graham*, 490 U.S. at 396. See also *Kopec*, 361 F.3d at 776-77. Any reasonableness determination conducted by the Court is to occur from the perspective of a reasonable officer at the scene, and without the benefit of hindsight. *Graham*, 490 U.S. at 396. Additionally, determinations of whether a police officer's actions are reasonable must take into account that split-second decisions are required by law enforcement personnel in circumstances that are "tense, uncertain, and rapidly evolving." *Id.* at 397.

> Methods employed by law enforcement that may seem extreme
> with the benefit of hindsight are not *per se* constitutional
> violations, even if they caused discomfort to a plaintiff. See
> *Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 821
> (3rd Cir. 1997).

*Wargo v. Municipality of Monroeville*, 646 F. Supp. 2d 777, 784-785 (W.D. Pa. 2009).

In the case at bar, Defendants take the position that the security camera video (Exhibit A) actually refutes many of the claims raised by Mr. McLaurin against the Defendant officers. Specifically, the video establishes that Officer Allison, Officer Bernatowicz, Sergeant Bielak, Sergeant Onderko and Detective Manges did **not** use any force that could objectively be deemed to have been excessive, unreasonable or in violation of Mr. McLaurin's constitutional rights under the Fourth Amendment or under Pennsylvania law. Therefore, those officers are entitled to a dismissal of all claims against them based upon the claims of excessive force, intentional infliction of emotional distress, assault and battery.

Additionally, the security camera video clearly disproves Mr. McLaurin's allegation that the Defendant Officers "slammed" him to the ground. Based upon this video, that allegation has no evidentiary support and must be dismissed.

### D.   Movant Officers are Entitled to Qualified Immunity

Qualified Immunity is an affirmative defense for government officials subject to §1983 actions which operates to shield government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009); see also *Behrens v. Pelletier*, 516 U.S. 299 (1996). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that

qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

In other words, an officer is not entitled to qualified immunity if 'at the time of the challenged conduct, the contours of the right were sufficiently clear that every reasonable official would have understood that what he was doing violates that right.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L. Ed. 2d 1149 (2011). 'We do not require a case directly on point, but existing precedent must have placed a statutory or Constitutional question beyond debate.' *Id.* 'The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.' *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citation and internal quotation marks omitted).

The Supreme Court has explained that a plaintiff may satisfy this standard by "identifying a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue]." *White v Pauly*, 137 S.Ct. 548, 552 (2017).

"The Supreme Court has 'repeatedly…stressed the importance of resolving immunity questions at the earliest stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009).

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in

>litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

*Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (emphasis added).

Qualified immunity provides "government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. at 743. Whether a government official is shielded by qualified immunity requires a reviewing court to look to the objective legal reasonableness of the officials' actions alleged to have violated the plaintiff's rights. *Vega v. Ripley*, 2013 U.S. Dist. LEXIS 191975, at *15 (M.D. Pa. May 15, 2013) *citing Orsatti v. New Jersey State Police*, 71 F.3d at 483.

A two-step process has been established by the Court when analyzing the qualified immunity defense. The first step includes the court viewing the facts, taken in the light most favorable to plaintiff, to determine whether the facts show a constitutional violation. If the court finds a constitutional violation, then the second step is to determine whether the constitutional right at issue was clearly established at the time of the alleged violation. *Saucier v Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). The courts have gone further by explaining that a right is "clearly established" if a reasonable officer would understand that his actions would violate such right. *Id.* Subsequent decisions by the Supreme Court removed the two-step requirement and held that if either step is fulfilled, qualified immunity applies.

An officer is entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate clearly established constitutional rights. *Saucier*, 533 U.S. at 202. (If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense.) The Court's qualified immunity analysis therefore "looks to the

11

reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct." *Stephenson v Doe*, 332 F.3d 68, 80 (3d Cir. 2003).

Qualified immunity is a question to be decided by the Courts and not the jury. *Curley v Klem*, 499 F.3d 199, 209 (3d Cir. 2007); citations omitted.

An objective review of the security camera video (Exhibit A) supports the argument that Officer Allison, Officer Bernatowicz, Sergeant Bielak, Sergeant Onderko and Detective Manges are entitled to qualified immunity because their actions did not violate any known constitutional right possessed by Mr. McLaurin and/or they would not have known that their respective actions, as depicted in that video, would have constituted a violation of McLaurin's constitutional rights. Accordingly, based upon that video, those officers are entitled to qualified immunity and dismissal from this action.

### E. Movant Officers' Use of Force Did Not Violate Pennsylvania Law

Pennsylvania Crimes Code sets forth various situations in which the use of force is justified. Section 508 of Pennsylvania's Crime Code is entitled Use of Force in Law Enforcement. Subsection (a) states, in pertinent part:

"A peace officer…need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest…" 18 Pa.C.S.A. §508(a)(1)

In the instant matter, the arrest of Mr. McLaurin was a lawful arrest supported by probable cause. Further, the security camera video (Exhibit A) clearly establishes that the use of force by the movant officers in arresting Mr. McLaurin was objectively reasonable and not

12

excessive under §508 of the Pennsylvania Crimes Code. Therefore, the state law claims of intentional infliction of emotional distress, assault and battery must be dismissed as a matter of law because the use of force by the moving officers was authorized, justified and reasonable.

### F.     State Law Claim – Intentional Infliction of Emotional Distress

> [T]o prevail on an intentional infliction of emotion distress claim, a plaintiff must show: (1) the conduct of the defendant was intentional or reckless; (2) the conduct of the defendant was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the distress was severe. *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 556 (W.D. Pa. 2019)(citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)). 'Outrageous' and 'extreme' conduct is defined as conduct that is 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.' *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122, n.5 (Pa. Super. Ct. 2004)(quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Liability under this cause of action is 'reserved by the courts for only the most clearly desperate and ultra-extreme conduct.' *Hoy*, 720 A.2d 754. The determination as to whether the alleged conduct may reasonably be regarded as so extreme as to permit recovery is left to the court in the first instance. *See Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1998).

It is also firmly established in Pennsylvania that in order to successfully plead a cause of action for negligent or intentional infliction of emotional distress, a plaintiff must set forth facts indicating that the plaintiff actually suffered a physical injury as a result of the defendants conduct. *Toney v. Chester County Hosp.*, 961 A.2d 192, 202 (Pa. Super. 2008).

In the instant case, Plaintiff's state law claim of intentional infliction of emotional distress against the movant officers must be dismissed because an objective review of the security camera video disproves necessary conclusion that the actions of Officer Allison, Officer Bernatowicz, Sergeant Bielak, Sergeant Onderko and Detective Manges exhibited "conduct of the Defendant [that] was extreme and outrageous" as defined under Pennsylvania law.

Accordingly, the claim of intentional infliction of emotional distress against these officers must be dismissed as a matter of law.

G.  **Assault and Battery**

Assault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done, though it ever so small a degree, upon the person. *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994) citing *Cohen v. LIT Brothers*, 166 Pa. Super. 206, 209, 70 A.2d 419, 421 (1950).

A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery. *Renk, supra*. 641 A.2d at 293.

In the instant matter, and based upon the security camera video (Exhibit A), the movant officers clearly did not use excessive or unreasonable force under the circumstances to effectuate McLaurin's arrest. Therefore, objectively, claims of assault and battery cannot be established against them and those claims should be dismissed, with prejudice.

H.  **McLaurin's Guilty Pleas Establish that Police Had Probable Cause**

To the extent that Mr. McLaurin has alleged that the Defendant police officers lacked probable cause or were unjustified in their seizure of McLaurin, the Plaintiff's guilty pleas to charges of resisting arrest, disorderly conduct, possession and possession of paraphernalia establishes that the officers had probable cause to arrest him thereby precluding arguments that the seizure was unwarranted or unjustified. *Fields v. City of Pittsburgh*, 714 Fed. Appx. 137 (3d Cir. 2017).

Similarly, McLaurin's assertions that he did not resist arrest or did not act in a disorderly manner are precluded by the fact that he pled guilty to both of those charges arising out of this arrest. *Id.*

To succeed on the claim of false arrest, a plaintiff must show that the police lacked probable cause to arrest him. *Fields, supra.*, citing *Groman v. Township of Manalapan*, 47 Fed.3d 628, 634 (3d Cir. 1995). We have noted that it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with because probable cause need only exist as to any offense that would be charged under the circumstances. *Wright v. City of Philadelphia*, 409 Fed.3d 595, 602 (3d Cir. 2005) (quoting *Barna v. City of Perth Amboy*, 42 Fed.3d 809, 819 (3d Cir. 1994). In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2365 (1994), the Supreme Court ruled that a §1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings. See *Gilles v. Davis*, 427 Fed.3d 197, 208-09 (3d Cir. 2005).

The above-referenced legal authority is not cited for the proposition that the Plaintiff cannot maintain an excessive force claim in the instant matter. It merely means that he cannot allege that he did not resist arrest or act in a disorderly manner and further that Plaintiff cannot allege that the police seizure of him on November 23, 2019, was unjustified or without probable cause.

I.   **Resisting Arrest and Disorderly Conduct**

Under Pennsylvania law, a person commits the crime of resisting arrest or other law enforcement, a misdemeanor of the second degree if, "With the intent of preventing a public servant from affecting a lawful arrest or discharging any other duty, the person creates a

substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. §5104.

In the instant matter, Mr. McLaurin pled guilty to resisting arrest or other law enforcement, a misdemeanor of the second degree "in that the said LEE EARL MCLAURIN did RESIST AND FIGHT OFFICERS TRYING TO CUFF HIS ARMS AND/OR PUT HIM IN CRUIZER [sic] while the officer was attempting to make a lawful arrest and/or discharge lawful duties, occurring at 500 BLOCK CHERRY STREET, CITY OF ERIE, Erie County, Pennsylvania." (See Exhibit E, Criminal Information; Exhibit F, Defendant's Statement of Understanding of Rights Prior to a Guilty Plea; and Exhibit G, Sentencing Order.)

Based upon the foregoing legal definition of resisting arrest and the facts to which Mr. McLaurin pled guilty, Mr. McLaurin should be barred and prohibited from raising allegations that he did not resist arrest on November 23, 2019, when he was taken into custody by the Defendant officers.

Under Pennsylvania law, a person is guilty "of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly create a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

"The crime of disorderly conduct is graded as "a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist."

In the instant matter, Mr. McLaurin pled guilty to disorderly conduct, a misdemeanor of the third degree admitting that he "with the intent to cause substantial harm or serious inconvenience, or did persist in disorderly conduct after reasonable warning or request to desist, in that the said LEE EARL MCLAURIN did SPIT BLOOD IN OFFICERS' FACES occurring at 500 BLOCK CHERRY STREET, CITY OF ERIE, Erie County, Pennsylvania…" (See Exhibit E, Criminal Information; Exhibit F, Defendant's Statement of Understanding of Rights Prior to a Guilty Plea; and Exhibit G, Sentencing Order.)

Based upon the foregoing, the Plaintiff, Lee McLaurin, should be barred or prohibited from arguing or inferring that he did not engage in disorderly conduct during the course of his arrest by the Defendant officers.

J.     **Failure to Intervene**

A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, but only if there is a realistic and reasonable opportunity to intervene. *EL v. City of Pittsburgh*, 975 Fed.3d 327 (3d Cir. Pa. 2020); citing *Smith v. Mensinger*, 293 Fed.3d 641, 650-51 (3d Cir. 2002). Naturally enough, the duration of the incident is key to determining whether there was a reasonable opportunity. There may be a genuine issue of fact regarding a reasonable opportunity to intervene where the allegedly excessive force lasts about 15 minutes. *EL v. City of Pittsburgh*, 975 Fed.3d at 335, citations omitted. By contrast, where an incident is momentary, its brevity may defeat a failure to intervene claim. *Id.*

In the case at bar, the crux of McLaurin's claim of excessive force (as well as assault, battery and infliction of emotional distress), is based upon the blows that were delivered to McLaurin in an attempt to cause him to pull his right hand out of his waistband area. The brevity

of the time period during which those blows were struck as is shown in the security camera video (Exhibit A) is such that the movant officers would not have had a reasonable opportunity to intervene even if they believed that those blows constituted a use of excessive force. Therefore, to the extent that a failure to intervene claim has been raised herein, and the Defendants dispute that fact, such a claim must be dismissed based upon the foregoing legal authority.

### K.  Plaintiff's Failure to Raise Failure to Intervene Claim

In the instant matter, the Plaintiff has failed to plead a failure to intervene claim with respect to the alleged use of excessive force. Although a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the officer has that duty "only if there is a realistic and reasonable opportunity to intervene." See *Smith v. Mensinger*, 293 Fed.3d 641, 650-51 (3d Cir. 2002).

Given the fact that the crux of the Plaintiff's excessive force claim is based upon the punches or blows delivered to Mr. McLaurin during his arrest, a failure to intervene claim, had it been pled by the Plaintiff, would have focused on that portion of McLaurin's arrest. However, the Plaintiff's Complaint is silent as to any alleged failure to intervene, any allegation that the movant officers had a realistic and reasonable opportunity to intervene and therefore such a claim has not been raised by Mr. McLaurin in the instant matter. Because Mr. McLaurin does not set forth a specific claim as to each officer that they had a realistic or reasonable opportunity to but failed to intervene, or any other factual basis to establish such a claim, it is clear that a failure to intervene claim has not been raised by Mr. McLaurin and should be considered waived by the Plaintiff at this point.

L.   **Personal Involvement**

To establish a claim under §1983, a plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of law. *Woloszyn v. County of Lawrence*, 396 Fed.3d 314, 319 (3rd Cir. 2005).

"A defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely upon the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Evancho v. Fisher*, 423 Fed.3d 347, 353 (3rd Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 Fed.3d 1195, 1207 (3rd Cir. 1988).

In the instant matter, Plaintiff has not alleged that any of the named Defendants had personal involvement in the use of pepper spray against Mr. McLaurin after his arrest. Therefore, any such allegation in the Complaint should be dismissed because of a lack of showing of personal involvement on behalf of the named officers.

WHEREFORE, for the reasons stated herein and based upon the legal authority cited above, Defendants, Officer Allison, Officer Bernatowicz, Sergeant Bielak, Sergeant Onderko and Detective Manges, respectfully request an Order from this Honorable Court granting their Motion for Partial Judgment on the Pleadings and dismissing the Plaintiff's claims, with prejudice.

Respectfully submitted,
**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By _____
Patrick M. Carey, Esquire
717 State Street, Suite 701
Erie, PA 16501
(814) 480-7800

LEGAL/144259258.v1

IN THE DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE McLAURIN,<br><br>    Plaintiff<br><br>    v.<br><br>CITY OF ERIE, OFFICER JOSHUA ALLISON, OFFICER NICK BERNATWOICZ, OFFICER NICHOLAS STRAUCH, SERGEANT JAMES BEILAK, SERGEANT RYAN ONDERKO, DETECTIVE TODD MANGES, POLICE OFFICER JOHN DOE(S) | NO.   1:21-CV-322<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Brief in Support of Defendants' Motion for Partial Judgment on the Pleadings was duly served on all counsel of record and unrepresented parties on the 21st day of February, 2022, electronically, courthouse box or by mailing same to them at their designated offices by first class United States mail, postage paid.

John F. Mizner, Esquire
Mizner Law Firm
311 West Sixth Street
Erie, PA  16507

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By_____
Patrick M. Carey, Esquire