## IN THE DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE MCLAURIN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | NO. 1:21-cv-322 |
| v. | ) | |
| | ) | |
| CITY OF ERIE, | ) | |
| OFFICER JOSHUA ALLISON, | ) | |
| OFFICER NICK BERNATOWICZ, | ) | |
| OFFICER NICHOLAS STRAUCH, | ) | |
| SERGEANT JAMES BEILAK, | ) | |
| SERGEANT RYAN ONDERKO, | ) | |
| DETECTIVE TODD MANGES, | ) | |
| POLICE OFFICER JOHN DOE(S), | ) | |
| | ) | |
| *Defendants.* | ) | **JURY TRIAL DEMANDED** |

## BRIEF IN OPPOSITION TO MOTION FOR
## PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff Lee McLaurin, by his attorneys at the Mizner Law Firm, files this Brief in

Opposition to Motion for Partial Judgment on the Pleadings and states:

## FACTS

On November 23, 2019, Mr. McLaurin was violently assaulted and subjected to excessive

force during his arrest[1]. Specifically, Mr. McLaurin was held at gunpoint while leaving Sophia's

Tavern, secured by an officer on both arms, and punched at least eight times in the face by

Officer Strauch, which knocked him unconscious. The video evidence makes clear that Mr.

McLaurin was physically held in place by Officer Bernatowicz and Detective Manges, and held

in place at gunpoint by Officer Allison, while Officer Strauch beat him repeatedly in the face,

including after his head sagged when he was knocked unconscious.

---

[1] The assault was largely captured on surveillance video by Sophia's Tavern, which has been
submitted to the Court by the Defendants in support of their Motion for Judgment on the
Pleadings.

Mr. McLaurin was then immediately taken to the ground, with the weight of three officers on top of him, and was subsequently kicked by one or more of the arresting officers - a fact admitted by Officer Allison from the witness stand in the criminal matter. He was eventually handcuffed, and then pepper sprayed while his arms were restrained. Finally, he was then taken to the Erie police station for booking, where an unknown officer noted that Mr. McLaurin was not hurt, despite the fact that he was bleeding so much from his face and head injuries that another officer reported "several officers had blood on various uniform items and themselves."

Every officer present either directly participated in the assault on Mr. McLaurin or failed to intervene to protect him, both a violation of his Fourth Amendment right to be free of unreasonable search and seizure.

Mr. McLaurin was charged with, and eventually pled guilty to, disorderly conduct, resisting arrest, possession and possession of paraphernalia. None of these facts are in dispute at this stage of the proceedings. Despite these documented facts, every individually named defendant except Officer Strauch has moved for Judgment on the Pleadings, and asked this Honorable Court to deny Mr. McLaurin a jury trial and find, as a matter of law, that these well-pled and accepted-as-true facts do not constitute excessive force, assault and battery, or intentional infliction of emotional distress for which they can be held liable.

## **STANDARD OF REVIEW**

The standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that for deciding a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). In deciding the defendant's motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. *Estelle v. Gamble*, 429 U.S. 97 (1976).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face).

In deciding the defendant's motion, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. *See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## <u>ARGUMENT</u>

Moving Defendants have raised a number of challenges to Mr. McLaurin's complaint, including that; 1) the individual officers other than Officer Strauch did not subject Mr. McLaurin to any excessive force; 2) the individual officers cannot be liable for failing to intervene when Officer Strauch, without provocation or necessity, punched Mr. McLaurin in the face eight times; 3) individual officers are entitled to qualified immunity; 4) the individual officers did nothing that could constitute intentional infliction of emotional distress;  and 5) the individual officers are not individually named as being the ones who pepper sprayed Mr. McLaurin as he was handcuffed.

For the following reasons, Moving Defendants are not entitled to Judgment on the Pleadings under any of these theories,  therefore their Motion should be denied and this case should proceed to discovery without further delay.

1. ***Whether the Moving Defendants subjected Mr. McLaurin to excessive force when they physically grabbed him and held him still as he was beaten in the face, slammed him to the ground, kicked him as he was restrained on the ground, and then pepper sprayed him while he was handcuffed is a question of fact.***

Moving Defendants first defense is that none of their conduct could constitute an "excessive" use of force: "Officer Allison, Officer Bernatowicz, Sergeant Bielak, Sergeant Onderko and Detective Manges did not use any force that could objectively be deemed to have been excessive, unreasonable or in violation of Mr. McLaurin's constitutional rights….." [ECF No. 18, p. 9].

"The use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Kam Wan Hung v. Evanko*, 115 F. App'x 553, 555 (3d Cir. 2004), citing  *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "The reasonableness of the officer's belief as to the appropriate level of force is to be judged from the perspective of a reasonable officer on the scene, not from hindsight." *Id.* at 555, citing *Graham v. Connor*, 490 U.S. 386, 396 (1989).

While none of the Moving Defendants' conduct may be as shockingly attention-grabbing as Officer Strauch's decision to violently punch Mr. McLaurin repeatedly in the face, the various officers also used force which must meet the "objective standards of reasonableness" as defined by Third Circuit case law. The various uses of force which Moving Defendants claim were justified *as a matter of law* - the initial physical seizure of Mr. McLaurin, holding him as he was being punched in the face, slamming him to the ground, kicking him as he was on the ground, and pepper spraying him after he was handcuffed - are analyzed below *seriatim*.

a. *The physical seizure of Mr. McLaurin.*

Mr. McLaurin has alleged that he was physically seized by two of the Moving Defendants, Officer Bernatowicz and Detective Manges, while he was being held at gunpoint by Moving Defendant Officer Allison, despite the fact that "[t]here was no basis or justification for pulling a weapon on Mr. McLaurin, as the video footage clearly shows that he was compliant, still and calm." [Complaint, para. 27-28]. The Officers' "justification" for this conduct, is that Mr. McLaurin did not comply with alleged orders to "show his hands" and instead "retreat[ed] further into his vehicle." [Complaint, para. 41]. Mr. McLaurin has unequivocally denied the officers claims, alleging that "Officer Allison drew his weapon on Mr. McLaurin six seconds [after coming into eyesight of Mr. McLaurin], without Mr. McLaurin making any move, much less 'retreating further into his vehicle.'" [Complaint, para. 42].

When determining the reasonableness of an allegedly excessive use of force, "the standard is whether the police officer's 'actions [were] objectively reasonable in light of the facts and circumstances' . . ., regardless of the officer's intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In making this determination, the Court considers "the severity of the crime at issue, whether the suspect[s] pose[] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court also assesses the physical injury to the plaintiff, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley*, 499 F.3d at 209-11.

In *El v. City of Pittsburgh*, the Third Circuit affirmed a district court's finding that a prima facie claim for excessive force existed where a plaintiff's actions consisted of "standing up and taking one or two small steps towards [defendant officer], located a few feet away," which were "not performed in a threatening manner," and which took place during "an investigatory stop first for suspicion of possession of synthetic marijuana and then for illegal sale/possession of cigarettes." 975 F.3d 327, 336-37 (3d Cir. 2020). The Third Circuit further affirmed that "a reasonable factfinder could conclude "grabbing [plaintiff] . . . by [the] wrist and neck and slamming him into the wall of the vacant storefront and on to the pavement was unreasonable and constituted an excessive use of force" in violation of the Fourth Amendment. *Id.*

In *El*, the Third Circuit favorably cited cases which held that, even where a plaintiff failed to comply with orders by the police, they could not be subjected to unreasonable physical seizure. *Deville v. Marcantel*, 567 F.3d 156, 161 (5th Cir. 2009) (question of fact when plaintiff was who was pulled over for speeding, swore, refused to get out of her car, and rolled up her window before officers smashed the window, pulled her out of the car, threw her up against it, and handcuffed her); *Montoya v. City of Flandreau*, 669 F.3d 867, 869 (8th Cir. 2012), (finding no qualified immunity for a police officer who responded to domestic dispute, and swept the leg of a woman "raised her right hand in a fist and took a step forward toward [the man]" and otherwise resisted arrest).

From this body of case law, the Third Circuit concluded: "[t]hese cases from our sister Circuits establish a 'consensus . . . of persuasive authority,' that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El*, at 340.

Mr. McLaurin has alleged that he was not even passively resisting the Moving Officers before he was physically grabbed - in fact, he has alleged that at all time prior to Officer Strauch's assault, he did not "make any sudden movements, attempt to avoid the officers, or do anything that could be considered 'resisting.' The truth as revealed by the video is that Mr. McLaurin was compliant, still and calm." [Complaint, para. 45-46]. Moreover, the video shows that the officers outnumbered Mr. McLaurin four to one, and that more officers arrived quickly after he was first seized. [Complaint, para. 34-35]. The video confirms how close the four officers were to Mr. McLaurin as he was being punched in the face; two of the officers were literally holding his arms, while Officer Allison was standing directly in front of him. The Court can take judicial notice of the fact that Mr. McLaurin was unarmed, and was not charged with possession of any weapon by the officers who assaulted him, and pled guilty to the relatively non-serious crimes of disorderly conduct, resisting arrest, possession and possession of paraphernalia.

Thus, Mr. McLaurin had every right to be free from being physically grabbed by Moving Officers, at gunpoint, and brought to the rear of the vehicle where he was beaten. While it is clear that the Moving Defendants dispute the facts Mr. McLaurin has alleged (despite the fact that they are fully captured on video, save for sound) at this stage of the proceedings, Mr. McLaurin is entitled to have all the facts he has alleged accepted as true and all inferences therefrom construed in his favor. At a minimum, there is an issue of fact about whether the Moving Defendants conduct is objectively reasonable in light of the facts and circumstances. This issue of fact must be resolved by a jury and therefore, Moving Defendants Motion for Judgment on the Pleadings should be denied.

    b.  *Holding Mr. McLaurin as he was being punched.*

Mr. McLaurin has alleged that he was punched "in the face at least eight times" by Officer Strauch, while "while his hands were secured behind his back" by Moving Defendants Officer Bernatowicz and Detective Manges, and as Officer Allison held him at gunpoint. [Complaint, para. 27, 31]. Again, Moving Defendants would have the Court conclude, as a matter of law, that their conduct was objectively reasonable, arguing no jury could conclude that their actions were excessive.

Again, Mr. McLaurin has alleged that he was not even passively resisting the Moving Officers before he was physically grabbed, that he did not "make any sudden movements or attempt to avoid the officers, or do anything that could be considered 'resisting.' The truth as revealed by the video is that Mr. McLaurin was compliant, still and calm." [Complaint, para. 45-46]. And again,  Mr. McLaurin was unarmed, and was not charged with possession of any weapon by the officers who assaulted him.

Given that the Third Circuit has established that "an unarmed individual… has the right not to be subjected to physical force such as being grabbed," *El*, at 340, Mr. McLaurin certainly had the right not to be held in place as he was punched over and over in the face, to the extent that he "was knocked unconscious from the blows." [Complaint, para. 32]. At the very least, the three Moving Defendants' conduct in holding Mr. McLaurin in place while he was beaten to the point of unconsciousness, through both physical force and the threat of deadly force, raises a question of fact which can only be resolved by the jury.

    *c.  Slamming Mr. McLaurin to the ground.*

Mr. McLaurin has alleged that "[a]s he was being punched, [his] head visibly dropped, indicating he had lost consciousness. Only after he was rendered unconscious was he slammed to the ground by the Officers." [Complaint, para. 55].

Again, the Third Circuit has established that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being… taken down." *El*, at 340. Here, Mr. McLaurin was not "uncooperative" nor did he "passively resist".  Given that Mr. McLaurin has  alleged that he was beaten to the point of being unconscious when he was slammed to the ground by the Moving Defendants, there is certainly, *at least* a question of fact as to whether that conduct was excessive.

    *d.  Kicking Mr. McLaurin as he was on the ground.*

Mr. McLaurin has alleged that after he was slammed unconscious to the ground, a number of the Defendants "piled"  "on top of him." [Complaint, para. 56]. "Despite the overwhelming control that the multiple officers had over Mr. McLaurin as he lay on the ground, Officer Allison admitted during his testimony in the criminal matter, that Mr. McLaurin had been kicked as he lay on the ground." [Complaint, para. 57].

Amazingly, the Moving Defendants argue that they "did not use any force that could objectively be deemed to have been excessive, unreasonable or in violation of Mr. McLaurin's constitutional rights….." [ECF No. 18, p. 9]. Think about that argument. Kicking a man who has been beaten to the point of unconsciousness, and who is lying on the ground fully restrained by numerous officers, according to the Moving Defendants, is, *as a matter of law*, objectively reasonable. This is remarkable given that the Third Circuit in *El* found that "grabbing [plaintiff] .

. . by [the] wrist and neck and slamming him into the wall" presented an issue of fact as to whether the force used was "objectively reasonable."

There is at least a question of fact whether kicking Mr. McLaurin has he lay restrained on the ground, violated his Fourth Amendment rights, and thus Moving Defendants' Motion for Judgment on the Pleadings should be denied.

e.   *Pepper Spraying Mr. McLaurin after he was handcuffed.*

Mr. McLaurin has alleged that one or more officers "deployed pepper spray on him - while he was in handcuffs, and after being beaten in the face." [Complaint, para. 60]. While, at this stage without the benefit of discovery, Mr. McLaurin is not aware which officer or officers deployed pepper spray against him, there is at least a question of fact whether the use of pepper spray after he was handcuffed constitutes excessive force in violation of the Fourth Amendment. *See Higgenbotham v. City of Trenton*, 2021 U.S. Dist. LEXIS 26268, at *35 (D.N.J. Feb. 11, 2021)("With respect to… the use of pepper spray… after [plaintiff] was handcuffed, I find that a genuine dispute of material fact exists as to whether [the officer's] conduct was objectively reasonable"); *Peschko v. City of Camden*, 2006 U.S. Dist. LEXIS 43871, at *16 n.14 (D.N.J. June 28, 2006) ("a reasonable jury could find that spraying pepper spray at an individual who is handcuffed and is not resisting constitutes excessive force"); *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 903 (6th Cir. 2004) (finding it clearly established that the use of pepper spray after arrestee was handcuffed and hobbled was excessive).

Therefore, Moving Defendants Motion for Judgment on the Pleadings should be denied, as there is a genuine question of fact whether the force deployed against Mr. McLaurin - pepper spray after he was handcuffed - was unreasonable and violated his Fourth Amendment rights.

**2.   *There is a question of fact whether the Moving Defendants failed to intervene in Officer Strauch's assault against Mr. McLaurin.***

To state a valid cause of action "in a case where an [victim] claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the [victim] must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene." *Knauss v. Shannon*, 2010 U.S. Dist. LEXIS 12496 (M.D. Pa. Feb. 12, 2010), *citing Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir.2002). The Third Circuit has noted, "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Mensinger*, at 650. In *Mensigner*, the Court instructed: "The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows." *Id.* at 651.

Mr. McLaurin has alleged, and has included references to still frames in the Tavern security video to corroborate, that he was being retrained by three of the Moving Defendants when Officer Strauch punch him repeatedly in the face: his two arms were secured by Officer Bernatowicz and Detective Manges, and he was held at close gunpoint by Officer Allison. [Complaint, para. 27-30].

Moving Defendants argue that they cannot be liable for failing to intervene against Officer Strauch's assault of Mr. McLaurin, because "movant officers would not have had a reasonable opportunity to intervene if they believed that those blows constituted a use of excessive force." [ECF No. 18, p. 18]. Another astonishing statement, given that it takes a single moment to yell "stop" or to move Mr. McLaurin to a less vulnerable position.

Moreover, the Moving Defendants' brief is utterly silent as to why this assertion, that there was no reasonable opportunity to intervene, is not a question of fact, rather than a conclusion of law. The Complaint indicates, and the still frames of the Tavern surveillance footage demonstrate, that Officer Allison was in the immediate vicinity of Mr. McLaurin as he was assaulted, and that Officer Bernatowicz and Detective Manges were physically holding him in place as he was punched in the face. No one directed Officer Strauch to stop. No moved to move or shield Mr. McLaurin from the repeated punching. Whether any of the Moving officers had a "reasonable opportunity" to intervene presents, at the very minimum, a question of fact for the jury to resolve. Moving Defendants have not cited any case law or other authority suggesting that, when officers are physically holding a victim of excessive force, they are not in a position to, or constitutionally required to, intervene when another officer begins punching a restrained victim in the face. Indeed, no such case law exists because it defies common sense.

It is true that Officer Strauch's punches did not last a long period of time. But, the fact remains that the Moving Defendants were so close in proximity to Mr. McLaurin, and did nothing but assure Mr. McLaurin remained defenseless. The Moving Defendants' conduct is exactly what the Third Circuit condemned in *Mensigner*: "[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows." *Id.* at 651.

Because Moving Defendants conduct creates a question of fact which can only be resolved by the jury, the Motion for Judgment on the Pleadings should be denied.

### 3. Mr. McLaurin has sufficiently pled a violation of his Fourth Amendment rights against the Moving Defendants.

Moving Defendants have alternatively argued that Mr. McLaurin has "waived" a claim against them for failing to intervene, because "Mr. McLaurin does not set forth a specific claim as to each officer that they had a reasonlistic or reasonable opportunity to but failed to intervene, or any other factual basis to establish such a claim…." [ECF No. 18, p. 18]. However, Moving Defendants do not explain, nor cite any case law or rule of civil procedure, which indicates that failing to recite the legal standard for failure to intervene, is a "waiver" of this Fourth Amendment claim.

In *El v. City of Pittsburgh*, a "failure to intervene claim" was properly raised against a supervising officer, when she was sued "in federal court, asserting Fourth Amendment excessive force claims and state law assault and battery claims." *El v. City of Pittsburgh*, 975 F.3d 327, 331 (3d Cir. 2020). The Third Circuit explained, "the excessive force claim against Lieutenant Kacsuta is, specifically, a failure to intervene claim." *Id*. at 335. This is precisely why the Moving Defendants have been sued in this case, under Count II, for Excessive Force in violation of the Fourth Amendment. [Complaint, para. 92-102].

Without dispute, the federal pleading standard under Rule Rule 8 requires only a short and plain statement of the claim and its grounds. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Supreme Court, in its oft-quoted decision in *Bell Atlantic Corp. v. Twombly,* repeatedly indicated that it was not adopting or applying a "heightened pleading standard," writing: "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). That has easily been accomplished here.

Mr. McLaurin has properly pled a Fourth Amendment claim against the Moving Defendants, and at this stage where all facts and reasonable inferences are to be drawn in his favor, is entitled to pursue his Fourth Amendment claims against all named defendants. Moving Defendants have not argued, nor could they, that the Complaint is not sufficiently detailed to appraise them of the facts and legal claims at issue, as they have fully responded to and briefed both the facts and the law that Mr. McLaurin has raised. Although it is true that the Complaint did not include an individual analysis of what opportunities were present for each officer to personally intervene in Officer Strauch's assault of Mr. McLaurin, or include the formulaic language that they "had a reasonlistic or reasonable opportunity to but failed to intervene," such formulaic pleading is plainly not required under the *Twombly* standard.

Finally, no support exists for the argument that a claim is "waived" if it is insufficiently supported by facts in an initial Complaint. Tellingly, Moving Defendants cite none in their brief. [ECF No. 18, p. 18]. To the contrary, F.R.Civ.P. 15 specifically permits the amendment of pleadings, except in situations where the amendment would be futile, and that leave to amend should be freely given when justice so requires. In this case, even assuming that the Court found the Complaint to be deficient in its description of the Moving Officer's conduct (such that there was no reasonable inference that they had an opportunity to intervene as Mr. McLaurin was being punched in the face), Moving Defendants' own brief suggests that this deficiency would be cured by setting forth a plain statement of how each officer failed to reasonably intervene, despite the opportunity to do so.

Mr. McLaurin has properly pled a Fourth Amendment claim against the Moving Defendants, and at this stage where all facts and reasonable inferences are to be drawn in his favor, is entitled to pursue his Fourth Amendment claims against all named Defendants. Thus,

the claim is not waived. To the extent that this Honorable Court agrees that a Fourth Amendment claim against the Moving Defendants has not been properly pled, granting leave for amendment of the Complaint to amplify the factual averments against the Moving Defendants is appropriate pursuant to F.R.Civ.P. 15.

### 4.   There is a question of fact whether the Moving Defendants' conduct was sufficiently "outrageous" to constitute an intentional infliction of emotional distress.

Moving Defendants argue that the intentional infliction of emotional distress claim against them must be dismissed, because none of them "exhibited conduct… that was extreme and outrageous." [ECF No. 18, p. 13]. While the parties agree on the legal standard, there is a clear factual disagreement over whether the Defendants conduct could be found to be outrageous by a jury.

Despite make this bold conclusion that none of the moving defendants' conduct could be considered "outrageous," Moving Defendants' brief does not analyze the various acts of force to which Mr. McLaurin was subjected. Moving Defendants do not explain why a reasonable jury could not find (1) holding Mr. McLaurin up while he was punched in the face until unconscious, (2) slamming him to the ground while unconscious, (3) kicking him while he was restrained on the ground under a pile of officer's bodies, and (4) pepper spraying him after he was handcuffed, to be outrageous conduct. Defendants do not cite a single case where such or similar conduct was found, as a matter of law, to not constitute outrageous conduct as a matter of law. To the contrary, law enforcement physically assaulting a bound person, has been found to create a question of fact whether intentional infliction of emotional distress occurred. *See Scott v. Carette*, 2013 U.S. Dist. LEXIS 156124, at *27 (E.D. Pa. Oct. 31, 2013)(intentional infliction of emotional distress properly pled where a corrections officer "verbally assaulted Plaintiff, threw him up against a

15

concrete wall when he was handcuffed, and then ordered him to stand with his nose against a wall for around 45 minutes, causing Plaintiff to pass out.")

Instead, the Moving Defendants simply cite case law that intentional infliction of emotional distress cannot be established without the plaintiff suffering a "physical injury" from the tortious conduct. [ECF No. 18, p. 13]. Reference to the stated case law is dumbfounding given that, Mr. McLaurin has pled physical injuries to his face, head and finger, including the fact that "Mr. McLaurin's face was bleeding, to such an extent that 'several officers had blood on various uniform items and themselves.'" [Complaint, para. 66].

Mr. McLaurin has pled sufficient facts to support his claim for intentional infliction of emotional distress against Defendants, and their Motion for Judgment on the Pleadings should be denied.

5. ***There is a question of fact whether the Moving Defendants' conduct constitutes assault and battery under Pennsylvania law.***

Moving Defendants argue that "based upon the security camera video (Exhibit A), the movant officers clearly did not use excessive or unreasonable force under the circumstances… Therefore, objective claims of assault and battery cannot be established against them." [ECF No. 18, p. 14].

Whether the Moving Defendants' conduct constitutes assault and battery under Pennsylvania law is an issue of fact to be decided by the jury. *See Jones v. O'Rourke*, 2008 U.S. Dist. LEXIS 49917, at *45-46 (M.D. Pa. June 25, 2008)("questions of material fact" with respect to the assault claim against Officers "whether the force used by the officers was reasonable as per *Renk*" where plaintiff alleged she was pinned against the wall was between one (1) and five (5) seconds.)

Mr. McLaurin has alleged that he was physically seized by two of the Moving Defendants, Officer Bernatowicz and Detective Manges, while he was being held at gunpoint by Moving Defendant Officer Allison, despite the fact that "[t]here was no basis or justification for pulling a weapon on Mr. McLaurin, as the video footage clearly shows that he was compliant, still and calm." [Complaint, para. 27-28]. Mr. McLaurin has alleged that the Moving Defendants held him in place as he was beaten in the face, slammed him to the ground, piled on top of him, kicked him, and then handcuffed him before subjecting him to pepper spray. This conduct is assault and battery, by definition,[2] and absolutely none if it was necessary or related to a lawful effort to effectuate an arrest.

At a minimum Mr. McLaurin's allegations raise a question of fact to be resolved by the jury, as to whether the Moving Defendants assaulted and battered him during his arrest, and therefore the Motion for Judgment on the Pleadings should be denied.

**6.  The law governing the Moving Defendants' excessive force and failure to intervene was clearly established prior to the assault on Mr. McLaurin, and therefore the Moving Defendants are not entitled to Qualified Immunity.**

Defendants argue that they are entitled to qualified immunity "because their actions did not violate any known constitutional right possessed by Mr. McLaurin and/or they would not have known that their respective actions, as depicted in that video, would have constituted a violation of Mr. McLaurin's constitutional rights." [ECF No. 18, p. 12]. Preliminary, this defense is too limited, as Mr. McLaurin has alleged force by the Moving Defendants that was not captured by the video surveillance camera, such as subjecting him to pepper spray while handcuffed.

---

[2] "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994).

More importantly, the right of detainees to be free from excessive force has been clearly established for decades, as the Third Circuit described in detail in *El v. City of Pittsburgh*. There, the Court denied the defense of qualified immunity for two officers who physically assaulted suspects, holding that there was a "consensus . . . of persuasive authority, that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down…." *Id*. at 340. The Third Circuit further held that this right was established prior to July 2013, when the incident at issue took place. *Id*.

Mr. McLaurin was the victim of excessive force in November of 2019. Based on the holding in *El*, which the Defendants did not attempt to distinguish, despite citing it elsewhere in their brief, Moving Defendants are not entitled to qualified immunity at this stage of the litigation.

### 7. *Whether the Moving Defendants had probable cause to arrest Mr. McLaurin is irrelevant to the issue of whether they subjected him to excessive force, and failed to intervene when Officer Strauch assaulted him.*

Moving Defendants extensively argue that there was probable cause for Mr. McLaurin's arrest, as evidenced by his plea to disorderly conduct, resisting arrest, possession and possession of paraphernalia. [ECF No. 18, p. 14]. Yet, Defendants fail to appreciate the distinction between Mr. McLaurin's pleas, and whether the force used to effectuate his arrest was excessive. *See Niblack v. Murray*, 2016 U.S. Dist. LEXIS 99325, at *12 (D.N.J. July 29, 2016)("current established law is clear that even if a police officer has irrefutable probable cause to arrest an individual, the force used to effectuate that arrest must still be objectively reasonable.").

Thus, the fact that Mr. McLaurin chose to plead guilty to certain offenses, rather than bear all the risks associated with going to trial, is irrelevant to the question of whether the Moving Defendants' various uses of force during the arrest were objectively reasonable.

8. ***The mere fact that Mr. McLaurin does not yet know which Officer subjected him to pepper spray while he was handcuffed, is not a sufficient reason to dismiss the claim against the Moving Defendants.***

Moving Defendants' final argument is that "Plaintiff has not alleged that any of the named Defendants had personal involvement in the use of pepper spray against Mr. McLaurin after his arrest," and that therefore he has failed to prove the "personal involvement" of the Moving Defendants. [ECF No. 18, p. 19]. Moving Defendants could have, but for unknown reasons did not, make a similar argument about the fact that Mr. McLaurin was kicked while on the ground by an unknown officer.

In essence, Defendants are attempting to force Mr. McLaurin into a heightened pleading standard, where every single fact about the identity of each named defendant must be known and alleged, prior to the commencement of discovery. Simply stated, such a standard is far beyond what F.R.Civ.P. 8 requires. *See Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 127757, at *30 (D. Del. Nov. 4, 2011)("While the Amended Complaint does not allege every act taken in support of the alleged wrongdoing, or every time and date when such acts occurred, that level of comprehensive detail is not required by *Twombly.*").

Holding that the mere fact that Mr. McLaurin does not know which arresting officer deployed pepper spray against him prior to discovery, necessitating the dismissal of that claim, would create an absurd result in the law. Mr. McLaurin was pepper sprayed at night, after being beaten in the face until bloody, and was surrounded by numerous police officers. He has sued, by name, the various officers who were present and responsible for his arrest and the unreasonable

force which injured Mr. McLaurin. Presumably, these officers know both who deployed the pepper spray, and who kicked Mr. McLaurin, and presumably these identities will be disclosed during discovery.

While courts correctly require alleged misconduct conduct to be attributed to identified defendants at the summary judgment stage, *e.g. Vega v. York City*, 2011 U.S. Dist. LEXIS 170875, at *31 (M.D. Pa. Aug. 18, 2011)(recommending summary judgment after plaintiff failed to identify unknown officers), such requirements are not unfairly prejudicial because the plaintiff presumably has the benefit of discovery. Here, before any discovery has commenced, it is simply not reasonable for the Defendants to demand that Mr. McLaurin know and recall which named defendant took every single illegal action against him during the course of the arrest.

Plaintiff has properly pled various causes of action against the Moving Defendants. Not knowing which officer(s) pepper sprayed and/or kicked him is not a basis to dismiss a Fourth Amendment claim for excessive force against the Moving Defendants.  Plaintiff has more than satisfied his responsibility to provide "a short and plain statement of the claim and its grounds" required by Rule 8. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Moving Defendants' Motion for Judgment on the Pleadings should be denied, and this case should proceed to discovery.


Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

PA Supreme Court ID 53323
John F. Mizner
jfm@miznerfirm.com

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

## IN THE DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE MCLAURIN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | NO. 1:21-cv-322 |
| v. | ) | |
| | ) | |
| CITY OF ERIE, | ) | |
| OFFICER JOSHUA ALLISON, | ) | |
| OFFICER NICK BERNATOWICZ, | ) | |
| OFFICER NICHOLAS STRAUCH, | ) | |
| SERGEANT JAMES BEILAK, | ) | |
| SERGEANT RYAN ONDERKO, | ) | |
| DETECTIVE TODD MANGES, | ) | |
| POLICE OFFICER JOHN DOE(S), | ) | |
| | ) | |
| *Defendants.* | ) | **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, the foregoing Brief in Opposition to Motion for Partial Judgment on the Pleadings was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties who have appeared of record by operation of the Courts ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the courts ECF system.

/s/ John F. Mizner
John F. Mizner